1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JEFFREY JAY HAWKINS,

11                    Petitioner,                  No. CIV S-96-1155 MCE EFB DP

12          vs.

13   ROBERT K. WONG, Warden,              <u>ORDER</u>

14                    Respondent.              **DEATH PENALTY CASE**

15   _____/

16          Petitioner, a state prisoner on California's Death Row, proceeding through

17   counsel, has filed an application for a writ of habeas corpus pursuant to 28 U.S.C.  § 2254.  The

18   matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and

19   Local Rules 191(f) and 302(c)(17).

20          On September 2, 2010, the magistrate judge filed findings and recommendations

21   herein which were served on all parties and which contained notice to all parties that any

22   objections to the findings and recommendations were to be filed within twenty-one days.  After

23   an extension of time, both parties have filed objections to the findings and recommendations.

24          Three days after filing objections to the findings and recommendations, petitioner

25   submitted a request to expand the record and several lengthy declarations and exhibits.  Dckt.

26   Nos. 228-232.  The new items of evidence consist of: (1) the declarations of Steven Shatz,

1

1   Gerald Uelman, David Baldus, George Woodworth, and Donald Heller; (2) respondent's

2   interrogatory responses in Frye v. Woodford, No. S-99-0628 LKK JFM concerning certain

3   California death penalty statistics and the Schatz Declaration; (3) the June 30, 2008 "Report and

4   Recommendations on the Administration of the Death Penalty in California" prepared by the

5   California Commission on the Fair Administration of Justice; and (4) various newspaper articles

6   concerning the evolution of California's Death Penalty Law.

7          On May 27, 2011, the magistrate judge ordered the parties to file supplemental

8   briefs on the impact of Cullen v. Pinholster, ___ U.S. ___, 131 S. Ct. 1388 (2011).  Dckt. No.

9   234.  The briefs have been submitted.

10          In accordance with the provisions of 28 U.S.C. § 636(b)(1)(C) and Local Rule

11  304, this court has conducted a de novo  review of this case.  Having carefully reviewed the

12  entire file, the court finds the findings and recommendations to be supported by the record and by

13  proper analysis and will adopt the findings and recommendations in full.  Some additional

14  discussion is warranted, however, to address the additional evidence submitted by petitioner after

15  the findings and recommendations issued and, relatedly, the impact of Pinholster on this case.

16          In Pinholster, the U.S. Supreme Court held that "evidence introduced in federal

17  court has no bearing on § 2254(d)(1) review.  If a claim has been adjudicated on the merits by a

18  state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the

19  record that was before the state court."  131 S. Ct. at 1400.  In other words, where, as here, the

20  state court has adjudicated a petitioner's claims on their merits, a federal habeas court's

21  determination of whether that state adjudication was contrary to, or an unreasonable application

22  of, clearly established federal law is limited to the evidence presented to the state court.  It is

23  therefore a potential waste of judicial time and resources as a practical matter to admit evidence

24  in federal court that was not considered by the state court before determining that the state court's

25  decision was not entitled to deference under § 2254(d)(1).

26  ////

1    In the findings and recommendations, the magistrate judge recommended that the

2 court hold an evidentiary hearing on petitioner's Claims A, B, R, S, and the ineffective-

3 assistance-of-counsel sub-claims of Claim W.  There is no dispute that each of these claims was

4 denied on its merits by the California Supreme Court and is thus subject to the limitations of §

5 2254(d).  Accordingly, following Pinholster, consideration of evidence not heard by the state

6 court on these claims is pointless unless the court has determined that the state court's

7 adjudication of the claims was contrary to, or an unreasonable application of clearly established

8 federal law and thus not entitled to deference under § 2254(d)(1) or that the state court

9 unreasonably determined the facts and thus deference is not mandated pursuant to § 2254(d)(2).

10    In determining the propriety of an evidentiary hearing, the magistrate judge

11 expressly noted that "'a federal court may not grant an evidentiary hearing without first

12 determining whether the state court's decision was an unreasonable determination of the facts.'"

13 Dckt. No. 222 (quoting Earp v. Ornoski, 431 F.3d 1158, 1166-67 (9th Cir. 2005)).  As the Ninth

14 Circuit has recently reaffirmed, a state court determination of factual issues not presented by the

15 record without an evidentiary hearing on those issues is per se unreasonable.  Hurles v. Ryan, 706

16 F.3d 1021, 1038–1039 (9th Cir. 2013); Earp, 431 F.3d at 1167; Taylor v. Maddox, 355 F.3d 992,

17 1001 (9th Cir. 2004); see also Wellons v. Hall, 558 U.S. 220, 224 n.3 (2010) ("[I]t would be

18 bizarre if a federal court had to defer to state-court factual findings, made without any evidentiary

19 record, in order to decide whether it could create an evidentiary record to decide whether the

20 factual findings were erroneous. . . .  AEDPA does not require such a crabbed and illogical

21 approach[.]").  In this case, Claims A, B, R, S, and the ineffective-assistance-of-counsel sub-

22 claims of Claim W present factual issues that cannot be resolved by the record or by the

23 documentary evidence presented in state court – in particular, the credibility of assertions made

24 by petitioner's trial attorneys.  Earp, 431 F.3d at 1169–70 (stating that resolution of credibility

25 contests without an evidentiary hearing is unreasonable except in rare circumstances).  Because

26 the state court adjudication of these claims is therefore not entitled to deference pursuant to

1   § 2254(d)(2), <u>Pinholster</u> presents no bar to an evidentiary hearing in the instant case.

2   However, <u>Pinholster</u> does make consideration of petitioner's newly-submitted

3   evidence, relevant only to petitioner's claim that California's Death Penalty Law ("DPL")

4   violates the federal Constitution because it fails to adequately narrow the class of murderers

5   subject to capital punishment (a sub-claim of Claims T & FF), pointless.  The magistrate judge

6   concluded in his findings and recommendations that the state court's adjudication of this claim

7   was not contrary to, nor an unreasonable application of, clearly established federal law and was

8   thus entitled to deference under § 2254(d)(1).  Dckt. No. 222 at 74.  (There is no argument here

9   that the state court's determination of the claim was based on an unreasonable determination of

10   the facts under § 2254(d)(2).  <u>See</u> Dckt. No. 182 at 111-12.)

11   Even if the court were to consider the new evidence, it would not alter its

12   conclusions.[1]  Petitioner argues that, under U.S. Supreme Court precedent, the fact that only a

13   small percentage of death-eligible defendants receive the death penalty establishes that the DPL

14   does not sufficiently narrow the class of death-eligible defendants.  The supplemental evidence

15   does not provide a basis for deviating from the magistrate judge's recommendations.  As the

16   magistrate judge noted, the Ninth Circuit has held that the DPL adequately performs the

17   narrowing function.  <u>Karis v. Calderon</u>, 283 F.3d 1117, 1141 n.11 (9th Cir. 2002) ("California

18   has identified a subclass of defendants deserving of death and by doing so, it has narrowed in a

19   meaningful way the category of defendants upon whom capital punishment may be imposed.)

20   (internal citation and quotation marks omitted).  The supplemental evidence does not establish

21   that the DPL has materially changed since <u>Karis</u> or provide any other reason for deviating from

22   that precedent.

23

24   [1] Rule 7 of the Rules Governing § 2254 Cases in the U.S. District Courts requires that the
     court, in determining whether to expand the record, "give the party against whom the additional
25   materials are offered an opportunity to admit or deny their correctness."  Petitioner filed the
     supplemental evidence on October 25, 2010.  Respondent has filed no response or objection to
26   the evidence.

4

Second, the supplemental evidence is premised on the assertion that, under U.S. Supreme Court precedent, a death-penalty scheme under which a small percentage of death-eligible defendants actually receive the death penalty is per se unconstitutional for failing to adequately narrow the death-eligible class.  There is no clearly-established U.S. Supreme Court decision to this effect.  Petitioner relies on Penry v. Lynaugh, in which the Supreme Court stated:

> [A]s we made clear in Gregg v. Georgia, 428 U.S. 153, 199 (1976), so long as the class of murderers subject to capital punishment is narrowed, there is no constitutional infirmity in a procedure that allows a jury to recommend mercy based on the mitigating evidence introduced by a defendant.  Id., at 197-199, 203.  As Justice White wrote in Gregg:

> "The Georgia legislature has plainly made an effort to guide the jury in the exercise of its discretion, while at the same time permitting the jury to dispense mercy on the basis of factors too intangible to write into a statute, and I cannot accept the naked assertion that the effort is bound to fail. As the types of murders for which the death penalty may be imposed become more narrowly defined and are limited to those which are particularly serious or for which the death penalty is particularly appropriate as they are in Georgia by reason of the aggravating-circumstance requirement, it becomes reasonable to expect that juries – even given discretion not to impose the death penalty – will impose the death penalty in a substantial portion of the cases so defined.  If they do, it can no longer be said that the penalty is being imposed wantonly and freakishly or so infrequently that it loses its usefulness as a sentencing device." Id., at 222 (opinion concurring in judgment).

Penry v. Lynaugh, 492 U.S. 302, 327 (1989).  While the dicta quoted above indicates that where juries impose the death penalty on large number of death-eligible defendants, such a result is evidence that the death penalty scheme being administered has adequately narrowed the class of murderers eligible for death, it does not constitute clearly-established federal law that only those schemes in which a large percentage of death-eligible inmates receive the death penalty adequately narrow the death-eligible class.

Accordingly, IT IS HEREBY ORDERED that:

1.  Petitioner's request to expand the record with the evidence submitted at Docket Nos. 228-232 is denied;

2.  The findings and recommendations filed September 2, 2010 are adopted in

full;

       3.  Respondent's motion for summary adjudication (Docket No. 173) is granted as to Claims C, D, E, F, G, H, I, J, K, L, M, N, O, P, Q, T, U, V, X, Y, Z, AA, BB, CC, DD, FF, GG, and the trial court error sub-claims of Claim W and is otherwise denied;

       4.  Petitioner's motion for summary adjudication (Docket No. 182) is denied; and

       5.  Petitioner's motion for an evidentiary hearing (Docket No. 215) is granted as to Claims A, B, R, S, and the ineffective assistance of counsel sub-claims of Claim W and is otherwise denied.

DATED:  July 5, 2013

Troy L. Nunley
United States District Judge